IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED
WILLIAM T. WALSH, CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 09cr859 (JAP) |
| | : | |
| v. | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 287 |
| MARC VELASQUEZ VERSON, | : | 18 U.S.C. § 1349 |
| ELLEN THOMPSON and | : | 18 U.S.C. § 1343 |
| DORIS MARTINEZ, | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 982 |
| Defendants. | : | |
| | : | INDICTMENT |

RECEIVED

NOV 18 2009

AT 8:30_____M
WILLIAM T. WALSH
CLERK

The Grand Jury, in and for the District of New Jersey, sitting at Camden, charges:

## General Allegations

At all times relevant to this Indictment:

1.   The Americans with Disabilities Act ("ADA") required that each common carrier providing telephone voice transmission services provide Telecommunications Relay Services ("TRS") in the area in which it offered services so that deaf and hard of hearing individuals could communicate with hearing individuals "in a manner that is functionally equivalent to . . . voice communication services."  A nationwide TRS program began in 1993. Video Relay Service ("VRS") was a specific type of TRS.

2.   VRS was an online video translation service that allowed people with hearing disabilities to communicate with hearing individuals online through the use of interpreters and web cameras.  A person with a hearing disability could communicate with a hearing person by contacting a VRS provider

through an audio and video internet connection.  The VRS
provider, in turn, employed a Video Interpreter ("VI") to view
and interpret the hearing disabled person's signed conversation
and relay the signed conversation orally to a hearing person.
VRS also allowed a hearing person to initiate contact with a
hearing disabled person through a VI.

3.    TRS, including VRS, was funded by fees assessed by the
Federal Communications Commission ("FCC") on all common carriers
providing interstate telecommunications services.  The fees were
generally passed on to consumers through charges included in
consumers' telephone bills.  The fees were deposited in the TRS
Fund.

4.    The TRS Fund was established by the FCC in 1993 as the
mechanism for collecting and disbursing TRS funds.  The National
Exchange Carrier Association ("NECA") was responsible for, among
other things, administering the TRS Fund.

5.    VRS providers were eligible to be reimbursed from the
TRS Fund for their legitimate services.  The TRS Fund reimbursed
VRS providers at the rate of approximately $6.73 per minute (or
approximately $403.80 per hour) for the first 50,000 minutes
billed in any given month, approximately $6.46 per minute
(approximately $387.60 per hour) for minutes 50,001 through
500,000, and approximately $6.26 per minute (approximately
$375.60 per hour) for all minutes over 500,000.

## Defendants and Relevant Entities

6.   NECA was a non-profit association that administered the TRS Fund.  This function included collecting carriers' annual contributions, receiving claims for reimbursement from VRS providers and making payments on behalf of the FCC to VRS providers for these claims.  NECA was headquartered in Whippany, New Jersey, in Morris County.

7.   VRS providers that were authorized by the FCC to receive payment for VRS would submit their monthly claims and requests for payment along with the required backup documentation to NECA and would be paid out of the TRS Fund, a function that the FCC contracted to NECA.  NECA required that VRS providers include call detail records for each billed call, which included the date, time and call duration.  NECA additionally requested that providers submit the originating phone number or IP address and the destination number with the call detail records.  An IP address identifies the computer from which the caller is calling. Because VRS calls were made over the internet, the IP address of the caller was generally used as the identifier for record-keeping purposes.

8.   Company 1 was a certified VRS provider based in New York, New York.  Company 1 provided VRS through home-based VIs located throughout the country.  Company 1 entered into contracts with third-parties by which the third-party would use Company 1's

VRS service and pay the third-party user a percentage of the reimbursement from the TRS Fund.

9.    Deaf Studio 29, Inc., ("Deaf Studio 29"), Verson Studio, Inc. ("Verson Studio") and Deaf News Network, Inc. ("Deaf News Network") were California corporations established in or about 2006 and headquartered in Huntington Beach, California. Deaf Studio 29 contracted with Company 1 to provide "marketing services" using Company 1's VRS service.  In return for providing the purported "marketing services," Deaf Studio 29 would receive approximately 25% of the money paid by NECA to Company 1 for the VRS call minutes generated by Deaf Studio 29.  On some occasions, Company 1 made such payments directly to Deaf Studio 29, and on other occasions Company 1 made the payments to Verson Studio and Deaf News Network.

10.   MARC VELASQUEZ VERSON ("VELASQUEZ") was the founder, owner and Chief Executive Officer of Deaf Studio 29, Verson Studio and Deaf News Network. VELASQUEZ was also the principal point of contact between Company 1's executives and employees and his companies.

11.   ELLEN THOMPSON was the Chief Operating Officer for Deaf Studio 29, Verson Studio and Deaf News Network.

12.   DORIS MARTINEZ was the registered agent for Deaf Studio 29, Verson Studio and Deaf News Network.

4

## COUNT 1
### (Conspiracy to Defraud the United States and to Cause the Submission of False Claims: 18 U.S.C. § 371)

13.   The allegations contained in paragraphs 1 through 12 of this Indictment are repeated and realleged as if fully set forth herein.

14.   From in or about October 2008 through in or about September 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey, and elsewhere, defendants

**MARC VELASQUEZ VERSON,**
**ELLEN THOMPSON and**
**DORIS MARTINEZ,**

and others known and unknown to the Grand Jury did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to defraud the United States and agencies thereof and to commit offenses against them, to wit:

(A)   to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Federal Communications Commission and its agents in their administration of the Telecommunications Relay Services Fund, in violation of Title 18, United States Code, Section 371;

(B)   to defraud the United States of and concerning its right to have its officers and employees, and particularly the personnel and agents of the Federal Communications Commission,

free to transact the official business of the United States unhindered, unhampered, unobstructed and unimpaired by the exertion upon them of dishonest, corrupt, unlawful, improper and undue pressure and influence, in violation of Title 18, United States Code, Section 371; and

(C) to commit an offense against the United States by making and presenting to any department or agency of the United States, a false, fictitious, and fraudulent claim upon or against the United States, or any department or agency thereof, in violation of Title 18, United States Code, Section 287.

### Object of the Conspiracy

15. It was an object of the conspiracy for defendants VELASQUEZ, THOMPSON and MARTINEZ, and others, to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to NECA for reimbursement for VRS calls that the defendants knew to be false and fraudulent.

### Manner and Methods of the Conspiracy

16. The manner and methods by which defendants VELASQUEZ, THOMPSON and MARTINEZ, and others, known and unknown to the Grand Jury, sought to accomplish the object of the conspiracy included, among others, the following:

17. Defendants VELASQUEZ, THOMPSON and MARTINEZ would enter into an agreement with Company 1 stating that Company 1 would pay one of the defendants' companies-Deaf News Network,

Verson Studios, and/or Deaf Studio 29-between approximately 21%
and 25% of the money paid by NECA to Company 1 for every VRS
minute generated by the defendants or their employees.

18.   Defendants VELASQUEZ, THOMPSON and MARTINEZ and their
employees would begin generating illegitimate VRS call minutes
for Company 1's VRS services in or about October 2008.

19.   Defendants VELASQUEZ, THOMPSON and MARTINEZ would pay
their employees an hourly wage for the sole purpose of generating
illegitimate VRS call minutes for Company 1's VRS service.

20.   Defendants VELASQUEZ, THOMPSON and MARTINEZ would
arrange with Company 1 for each of the defendants' paid callers
to be assigned a unique URL-an internet web address such as
AKLLVRS.com-that the caller could use to make VRS calls through
Company 1.   The defendants and Company 1 referred to each URL as
a separate "queue."   Identifying each caller by his or her URL,
or queue, allowed the defendants to track how many VRS minutes
were generated by each paid caller.

21.   Defendants VELASQUEZ, THOMPSON and MARTINEZ would
generate approximately 97,500 VRS call minutes in March 2009 and
cause those VRS call minutes to be submitted to NECA for
reimbursement at a cost of approximately $633,750 to the TRS
Fund.

22.   Defendants VELASQUEZ, THOMPSON and MARTINEZ would
generate approximately 157,700 VRS call minutes in April 2009 and

cause those VRS call minutes to be submitted to NECA for reimbursement at a cost of approximately $1,025,050 to the TRS Fund.

### Overt Acts

23.   In furtherance of the conspiracy, and to accomplish its object, at least one of the conspirators committed, or caused to be committed, in the District of New Jersey, and elsewhere, the following overt acts, among others:

24.   On or about April 2, 2009, the defendants caused a VRS call of approximately 53 minute duration was made from IP address 71.105.24.253 to a podcast at (209) 320-8933, which call was submitted to NECA for reimbursement on or about May 20, 2009.

25.   On or about April 21, 2009, the defendants caused an executive at Company 1 to submit via electronic mail to NECA Company 1's monthly minute report in support of receiving payment for Company 1's VRS call minutes for March 2009.

26.   On or about May 18, 2009, the defendants caused a VRS call of approximately 37 minute duration to be made from IP address 71.141.234.96 to (724) 444-7444, which call was submitted to NECA for reimbursement on or about June 19, 2009.

27.   On or about May 20, 2009, the defendants caused an executive at Company 1 to submit via electronic mail to NECA Company 1's monthly minute report in support of receiving payment for Company 1's VRS call minutes for April 2009.

28.   On or about June 22, 2009, an individual, who was paid by the defendants to make VRS calls through Company 1's VRS services, emailed defendant THOMPSON with the details of the dates, telephone numbers dialed, and lengths of the paid caller's calls for the month of April 2009.

29.   On or about July 29, 2009, an individual, who was paid by the defendants to make VRS calls through Company 1's VRS services, emailed defendant THOMPSON with the details of the days and length of paid caller's illegitimate calls for the month of July 2009.

All in violation of Title 18, United States Code, Section 371.

COUNTS 2-3
(Submission of False Claims: 18 U.S.C. §§ 287 and 2)

30.  The allegations contained in paragraphs 1 through 12 and 15-29 of this Indictment are repeated and realleged as if fully set forth herein.

31.  On or about the dates enumerated below, in the District of New Jersey, and elsewhere, defendants

MARC VELASQUEZ VERSON,
ELLEN THOMPSON and
DORIS MARTINEZ,

and others known and unknown to the Grand Jury, did make and present and cause the making and presenting to a person or officer in the civil, military, and naval service of the United States, and to a department or agency thereof, the following claims upon and against the United States, and a department or agency thereof, knowing such claims to be false, fictitious, and fraudulent:

| Count | Defendants | On or about Claim Date | Description of the Call |
|-------|-----------|------------------------|-------------------------|
| 2 | VELASQUEZ, THOMPSON and MARTINEZ | 5/20/2009 | Approximately 53 minute duration VRS call from IP address 71.105.24.253 to a podcast at (209) 320-8933, made on or about April 2, 2009 |
| 3 | VELASQUEZ, THOMPSON and MARTINEZ | 6/19/2009 | Approximately 37 minute duration VRS call from IP address 71.141.234.96 to (724) 444-7444, made on or about May 18, 2009 |

        In violation of Title 18, United States Code, Sections 287
and 2.

**COUNT 4**
**(Conspiracy to Commit Wire Fraud: 18 U.S.C. § 1349)**

32.   The allegations contained in paragraphs 1 through 12 and 15-29 of this Indictment are repeated and realleged as if fully set forth herein.

33.   From in or about October 2008 through in or about September 2009, the exact dates being unknown to the Grand Jury, in the District of New Jersey, and elsewhere, defendants

**MARC VELASQUEZ VERSON,**
**ELLEN THOMPSON and**
**DORIS MARTINEZ,**

and others known and unknown to the Grand Jury, did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1343, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

All in violation of Title 18, United States Code, Section 1349.

12

**COUNTS 5-6**
**(Wire Fraud: 18 U.S.C. §§ 1343 and 2)**

34.   The allegations contained in paragraphs 1 through 12 and 15-29 of this Indictment are repeated and realleged as if fully set forth herein.

35.   On or about the respective dates shown below, each such date constituting a separate count of this Indictment, within the District of New Jersey, and elsewhere, defendants

**MARC VELASQUEZ VERSON,**
**ELLEN THOMPSON and**
**DORIS MARTINEZ,**

and others known and unknown to the Grand Jury, for the purposes of executing the scheme and artifice to defraud described above and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice the following:

| Count | Defendants | On or about Wire Date | Description of the Wire |
|---|---|---|---|
| 5 | VELASQUEZ, THOMPSON and MARTINEZ | 4/21/2009 | Email from Company 1 executive to NECA employee in Whippany, New Jersey, Morris County, containing Company 1's request for payment for March 2009 VRS call minutes |
| 6 | VELASQUEZ, THOMPSON and MARTINEZ | 5/20/2009 | Email from Company 1 executive to NECA employee in Whippany, New Jersey, Morris County, containing Company 1's request for payment for April 2009 VRS call minutes |

In violation of Title 18, United States Code, Sections 1343 and 2.

CRIMINAL FORFEITURE
(18 U.S.C. § 982)

36.   The allegations contained in Counts 1-6 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, MARC VELASQUEZ VERSON, ELLEN THOMPSON and DORIS MARTINEZ have an interest in pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

37.   Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of MARC VELASQUEZ VERSON, ELLEN THOMPSON and DORIS MARTINEZ for any of the offenses charged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense or any property real or personal which was involved in the offense or any property traceable to such property.   Such forfeiture shall include, but not be limited to a money judgment in the amount of the gross proceeds of the fraud.

38.   If the property described above as being subject to forfeiture, as a result of any act or omission of MARC VELASQUEZ VERSON, ELLEN THOMPSON and DORIS MARTINEZ,

   (a)   cannot be located upon the exercise of due diligence;

   (b)   has been transferred or sold to or deposited with a third person;

15

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made applicable through Title 18, United States Code, Section 928(b)(1), to seek forfeiture of any other property of MARC VELASQUEZ VERSON, ELLEN THOMPSON and DORIS MARTINEZ up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).


                              A TRUE BILL



STEVEN A. TYRRELL
CHIEF, FRAUD SECTION


Hank Bond Walther
Assistant Chief, Fraud Section

Brigham Cannon
Trial Attorney, Fraud Section